## VITA et al. v. MORRIS.

### No. 11475.

Court of Civil Appeals of Texas. Dallas.
Sept. 29, 1934.

J. D. Kugle, Jr., of Dallas, for appellants.
Leffingwell & Dixon, of Dallas, for appellee.

LOONEY, Justice.

This suit originated in the justice court, was appealed to the county court, and from the judgment of the latter, this appeal was taken.

Monroe Vita, a veteran of the World War, carried $10,000 war risk insurance, his father, Joseph Vita, beneficiary, survived the insured, but had not received all the installments, payable and applicable, prior to his death; thereupon, the government paid to the administrator of the estate of the deceased soldier, in a lump sum, the then value of the unpaid monthly installments. The estate was, by the administrator, distributed, and paid to the heirs at law of the insured, under our statutes of descent and distribution. Charlie Vita, a brother and heir of the insured, receiving his distributive share, deposited same to his credit in the First National Bank in Dallas, where it was garnished by O. J. Morris, a creditor.

After the garnishment, the debtor replevied the fund under the statute; the garnishee answered, setting up the pertinent facts relating to its interest in the litigation; Charlie Vita intervened and contended that the fund was not subject to the writ of garnishment, in that, being proceeds of war risk insurance, was, under a provision of the federal code, exempt from the claims of creditors. This contention was denied below and the fund held subject to the writ of garnishment.

Section 514, tit. 38 USCA, provides that in a situation, such as is presented by these facts, the present value of unpaid installments shall be paid to the estate of the insured. That is precisely what was done in the instant case, and thus, in our opinion, the fund passed from the control of the federal statutes, and became and was subject to distribution under our statutes of descent and distribution.

The exemption provision of the federal statute, relied upon by appellants, is section 454, tit. 38 USCA, as follows: "The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation. Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Parts II, III, IV, and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable. The provisions of this section shall not be construed to prohibit the assignment by any person to whom converted insurance shall be payable under Part III of this chapter of his interest in such insurance to any other member of the permitted class of beneficiaries."

The courts of last resort are not in accord on the construction of this provision. In Payne v. Jordan, 152 Ga. 367, 110 S. E. 4, 5, the Supreme Court of Georgia held that "the purpose of the act is not merely to protect an allotment, made under the act, from legal process while in the hands of the government, or its agencies, but to preserve the allotment itself from legal process against the beneficiary, except as against the claims of the government itself." Also in Payne v. Jordan, 36 Ga. App. 787, 138 S. E. 262, the Court of Civil Appeals of Georgia extended the doctrine, so as to protect from legal process, real estate purchased and paid for with the proceeds of war risk insurance. However, this doctrine is in conflict with that announced by the Supreme Court of Kansas in State v. Board of Commissioners, 132 Kan. 233, 294 P. 915, where it was held that pension and compensation funds are only exempt from taxation under section 454 (that also protects said funds from the claims of creditors) while "payable," and when paid by the government, lose their exempt character.

The writer is of opinion that the courts of Georgia correctly interpreted the statute. Evidently, these funds were exempted from the payment of taxes and debts, for the benefit of a person, which cannot be realized until payment is made by the government; but if when received by the favored person the funds lose their exempt character, and are subject to be diminished by taxation or seized under legal process sued out by creditors, the exemption is but a mockery, and the government is placed in the attitude of keeping a promise to the ear, only to be broken to the hope. Until paid, the fund is in the ownership and custody of the government, and, in this situation, it is difficult to perceive how it could be either taxed as the property of the beneficiary or seized for his debts.

However, in disposing of the case, the court does not deem it necessary to apply either the Georgia or the Kansas rule of construction, in that, Charlie Vita was not a beneficiary of the insured, nor was an award

made in his favor, as he took the fund, not as beneficiary under the Act of Congress, but as a distributee of the estate of the insured, under an act of the Texas Legislature. The national government, having finally paid the fund to said estate, the same was as other property belonging to the estate, subject to distribution under the state statute [see In re Fink's Estate, 191 Wis. 349, 210 N. W. 834; Eblen v. Jordan, 161 Tenn. 509, 33 S.W.(2d) 65, 67], and subject, just as other property of the distributee, to the payment of his debts.

Finding no error in the judgment below, same is affirmed.

Affirmed.